UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                          Chapter 7

ARTHUR O. ANDERSON,                                             Case No. 8-10-70260-reg

                                    Debtor.
------------------------------------------------------------x

HYDROGROWERS INC.,                                              Adv. Proc. No. 8-10-08136-reg
JAN RIOS,
ALAN RIOS,
JOHN GOTTLIEB, and
GUY GERIG,

                                    Plaintiffs,

        v.

ARTHUR O. ANDERSON,

                                    Defendant.
------------------------------------------------------------x

## MEMORANDUM DECISION

Before the Court is an adversary proceeding commenced by Hydrogrowers, Inc., and its

shareholders, Jan Rios, Alan Rios, John Gottlieb, and Guy Gerig (collectively, the "Plaintiffs")

against the debtor, Arthur O. Anderson (the "Debtor").  The Plaintiffs are creditors of the Debtor

pursuant to a pre-petition state court judgment entered against the Debtor and his wholly owned

company, Turbo Plastics Corp. a/k/a Turbo Plastics Inc. ("Turbo Plastics"), in the amount of

$141,064.00.  In their complaint in this action, the Plaintiffs aver that the Debtor, as the 100%

shareholder and President of Turbo Plastics, is legally culpable for the actions of Turbo Plastics

in failing to turn over to Hydrogrowers, Inc. ("Hydrogrowers") products that Turbo Plastics was

obligated to manufacture, for which Turbo Plastics and/or the Debtor received payment in full.

The Plaintiffs also allege that prepetition, the Debtor transferred all of the assets of Turbo

Plastics to a company owned by his son for $5,000.00, which they argue was below fair market

value.  Finally, the Plaintiffs allege that the Debtor's petition contains several false statements, and that the Debtor failed to disclose valuable assets and failed to explain the loss of other assets. Based on these allegations, the Plaintiffs seek to have the judgment debt deemed nondischargeable pursuant to § 523(a)(2), (a)(4) & (a)(6)  of Title 11 of the United States Code (the "Bankruptcy Code").  In the joint pretrial memorandum, the Plaintiff set forth the issues to be determined at trial as whether the Debtor's discharge should be denied pursuant to § 727(a)(2)(A), (a)(3) and (a)(4)(A), and made no mention of § 523.  At trial, it was agreed that, notwithstanding the inconsistencies between the complaint and the joint pretrial memorandum, the issues before the Court are whether this debt is nondischargeable pursuant to § 523 and whether the Debtor's discharge should be denied pursuant to § 727.  For the reasons set forth below, the Court denies the Debtor's discharge pursuant to § 727(a)(3) and (a)(4)(A).  The Court also finds that the Defendant committed defalcation while acting in a fiduciary capacity pursuant to § 523(a)(4) when he disposed of the mold purchased by Hydrogrowers for his own benefit. Therefore, any benefit the Debtor received from the disposition of the molds is non-dischargeable.  The remainder of the claims are dismissed.

### *Facts*

The Debtor was the 100% shareholder and President of Turbo Plastics, which had the same address as the Debtor's residence.  Turbo Plastics made plastic objects from metal molds. In November 2004, the Debtor, in his individual capacity, entered into a partnership (the "Partnership") and entered into an interim working partnership agreement (the "Partnership Agreement") with the individual Plaintiffs whereby the signatories agreed to "jointly plan, produce, test, and market" a "hydroponic plant growing system" which was tentatively named

"The Salad Bar." (Exh. 2).  Pursuant to the Partnership Agreement, Jan Rios, Alan Rios and Guy Gerig were to contribute $45,000 each to the Partnership, John Gottlieb was to make a $15,000 contribution to the Partnership and the Debtor was to provide services valued at $20,000 for the benefit of the Partnership.  Jan Rios, Alan Rios, Guy Gerig and John Gottlieb were each to have a 22.5% interest in the Partnership and the Debtor was to have a 10% interest in the Partnership. (Exh. 2).  Subsequently, the Partnership entered into a contract with Turbo Plastics to build and produce a complete mold for the construction of the hydroponic growing system.  Pursuant to that contract, Turbo Plastics would construct a mold for the Partnership and Turbo Plastics would be given the opportunity to bid on the production of parts that the Partnership would then need in order to manufacture the hydroponic growing system.  (Exh. 10 at 3).  The cost of the mold was originally fixed at $100,000.00, payable by the Partnership to Turbo Plastics.  (Exh. 10 at 3; Exh. 3).  Despite the Debtor's representations that the mold would be completed in early 2005, the production date for the mold was delayed a number of times.  (Exh. 10 at 4).  In late 2005, the Partnership was converted into Hydrogrowers.  Notwithstanding the difficulties the other members of the Partnership were having with the Debtor, the Debtor was granted a 10% interest in Hydrogrowers, matching his 10% interest in the Partnership. Despite Turbo Plastics having received payment in full for the mold, Turbo Plastics failed to deliver the mold to Hydrogrowers.

### State Court Judgment

In November 2005, the Plaintiffs commenced an action against Turbo Plastics and the Debtor in the New York Supreme Court of Suffolk County (the "State Court"), index number 05-27106 seeking, *inter alia*, monetary damages.  As a consequence of the Debtor's default in

3

the State Court action,  a Decision and Order, dated November 30, 2009 ("State Court Decision") was issued in which the State Court found that (1) the Debtor was liable to the Plaintiffs for breach of contract, and (2) the Debtor, as a shareholder of Hydrogrowers, breached his fiduciary duty to Hydrogrowers, which was the successor in interest to the Partnership, and his fiduciary duty to the co-shareholders of Hydrogrowers.

In the State Court Decision, the Court found that the Debtor as a partner of the Partnership "breached the [Partnership] agreement based on the terms of the parties' contract by never producing the mold to Hydrogrowers." (Exh. 10 at 4).[1]  The State Court found that the Debtor had received $80,000.00 plus compensation for the parts in the amount of $3,043.00, for a total of $83,043.00. The State Court added the value of the Debtor's services to be provided towards the creation of the mold, as  memorialized in the Partnership Agreement, in the amount of $20,000.00, and held that the Plaintiffs were entitled to damages in the amount of $103,043.00, plus the statutory interest rate of nine percent accruing from November 21, 2005. (Exh. 10 at 6-7, Exh. 10 at 5).  The State Court denied the Plaintiffs' request for lost profits, finding that it was too difficult to prove, and did not award punitive damages.

The State Court also found that the Debtor breached his fiduciary duty to Hydrogrowers and his co-shareholders because "he scrapped these molds for $3,000 and without permission or any consultation to his co-shareholders." (Exh. 10 at 5-6).  Based on this breach of the Debtor's

---

[1]The State Court did not address the fact that the Partnership Agreement does not directly obligate the Debtor to create the mold, and the agreement to produce the mold was between Hyrdrogrowers and the Partnership, not between the Debtor and the Partnership.  The State Court also does not contain any findings that the Debtor and Turbo Plastics are one and the same under any legal theory.  However, the Court is bound to give the findings in this decision full faith and credit.  *See  Kelleran v. Andrijevic*, 825 F.2d 692, 694-95 (2d Cir. 1987), *cert. denied*, 484 U.S. 1007, 108 S. Ct. 701, 98 L.Ed.2d 652 (1988).

4

fiduciary duty, the State Court terminated the Debtor's interest in Hydrogrowers.  (Exh. 10 at 6).

***AC Manufacturing, Inc***.

At or around the time the Plaintiffs commenced the State Court action, the Debtor's son formed and remains the sole owner of AC Manufacturing, Inc. ("AC Mfg."). (March 15, 2011 Trial Transcript ("Tr. Tran.") p. 57, 63).  According to the Debtor's testimony at the trial in this adversary proceeding, the Debtor has been the manager of AC Mfg. for the last three years, and his son plays no part in running the business operations.  AC Mfg., which performs very similar functions to those formerly performed by Turbo Plastics, makes molds, performs plastic injection and occasionally makes  parts.  The Debtor testified that over a number of years, he had acquired for his own use various pieces of manufacturing equipment.  After AC Mfg was formed, most of this equipment was transferred to AC Mfg for $5,000.00.   The Debtor also testified at trial that he has a debit card from AC Mfg, and that he sometimes uses this card to pay personal bills, such as his cable bill, and to pay for a car, which he says is a "company car" that he uses for work and personal use.  (Tr. Tran. p. 54 - 57).  The Debtor also testified that the bank account for AC Mfg. is linked to the Debtor's PayPal account, which is used to accept payment for hydroponic gardening systems he sells on Ebay.  (Tr. Tran. p. 55-56, 81).  The Debtor occasionally writes checks from the bank account for AC Mfg. for his personal expenses. (Tr. Tran. P. 81).

***Bankruptcy Filings of Turbo Plastics and the Debtor***

On December 15, 2008, Turbo Plastics filed a petition for relief under Chapter 7.  The case was filed as a no asset case and was closed on March 25, 2009 after being fully

administered.[2]   On January 14, 2010 ("Petition Date"), the Debtor filed a petition for relief

under Chapter 7.  In the schedules and other documents filed by the Debtor, the Debtor lists no

real property, an ownership interest in a vehicle worth $2,600.00, and various other assets worth

less than $1,000.00.  In Schedule I, Debtor asserts he is unemployed and that his mold making

business is closed.

On April 7, 2010 the Plaintiffs filed the instant complaint alleging that the debt owed to

Plaintiffs is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4) & (a)(6).  Although the

Plaintiffs checked the boxes on the Adversary Cover Sheet for causes of action pursuant to §§

727(c), (d) and (e), these are not discussed anywhere in the complaint.  Section 727 is only

mentioned in the jurisdiction section of the complaint and in the last sentence of the complaint,

the Plaintiffs request that the Debtor's discharge be denied.  The Defendant filed an answer on

May 13, 2010 denying the allegation set forth in the complaint.

On March 9, 2011, the parties filed a Joint Pretrial Memorandum, in which the Plaintiffs

address § 727(a) causes of action but omit the § 523(a) causes of action contained in the

complaint.  The portion of the Joint Pretrial Memorandum prepared by the Plaintiffs sets forth

five issues of law to be addressed in this adversary proceeding.  First, the Plaintiffs seek denial

of the Debtor's discharge  pursuant to § 727(a)(2)(A) based on the allegation that the Debtor

concealed his interest in a bank account at Suffolk County National Bank where he deposited the

---

[2]Based on the evidence developed in this case, it appears that Turbo Plastics may have had assets at the time of its bankruptcy filing, and the Court has asked the former Chapter 7 trustee for Turbo Plastics, who is also the Chapter 7 trustee for the Debtor, to look into these assets and to examine the possibility of reopening the Turbo Plastics case.  The Chapter 7 trustee for Turbo Plastics acknowledged that he would re-examine the bankruptcy case filed by Turbo Plastics.

income of his various business ventures.  Plaintiffs' second issue is whether the Debtor's

discharge should be denied under § 727(a)(4)(A) based on the allegation that the Debtor failed to

disclose in his petition his future interest in a house where he resides in Moriches, New York,

and that the Debtor failed to disclose income he obtained and checks he wrote to himself from

the bank account of AC Mfg.  Also, the Plaintiffs allege that the Debtor failed to disclose that he

is the principal owner of ponicgardens.com and that he receives payment for hydroponic garden

units sold, which are substantially similar to the units Hydrogrowers was formed to sell.  The

Plaintiffs' third issue of law arises under § 727(a)(3) for failure to keep personal and business

financial records.  The Plaintiffs' fourth issue of law does not list a section of the Code, but sets

forth allegations regarding the formation of AC Mfg.  According to the Plaintiffs, the Debtor

used the business to "shield the mold and plastic product production that [the Debtor] had been

operating in this location for years under different names and corporate identities."  The

Plaintiffs request that the "assets of A C Mfg. Inc. be disposed of in favor of the creditors."  The

fifth issue of law asserts a § 548 claim for the alleged sale by the Debtor of assets to his son for

less than adequate consideration.

On March 11, 2011, the Debtor filed a motion to dismiss his bankruptcy petition pursuant

to § 707(b)(1) (the "Motion to Dismiss Case").  The Court set the hearing on the Motion to

Dismiss Case for March 15, 2011, the same day as the scheduled trial.  In the Motion to Dismiss

Case the Debtor sought voluntary dismissal of his case on the following grounds:

> 5. That the Debtor has failed to keep all of his financial records that have
> been requested by the Trustee and the Plaintiffs in the said Adversary Proceeding
> pending in Debtor's bankruptcy.
> 6. That the Debtor in this case has lost, destroyed, misplaced or can not
> [sic] find his financial records that would be needed for him to defendant [sic]
> himself against the Adversary Proceedings presently before the Court.

7

> 7. That the Debtor has a limited number of Creditors other than the Plaintiffs in this Adversary Proceeding.
>
> 8. That as such the Debtor no longer seeks to defend himself against the Adversary Proceeding pursuant to Bankruptcy Rule 1017.
>
> 9. That furthermore, because the Debtor did not property [sic] maintain his financial records, as required under the Bankruptcy code, the Debtor/Defendant is also seeking dismissal of his bankruptcy petition pursuant to 707(b)(1).

Motion to Dismiss Case at 3 - 5.

On March 14, 2011, the Chapter 7 Trustee, Richard L. Stern (the "Trustee"), filed opposition to the Motion to Dismiss Case.  The Trustee argued that the Motion to Dismiss Case was tantamount to consent to the denial of discharge.  However, the Trustee argued that the Debtor should not be permitted, on the eve of trial, to frustrate the ability of the Plaintiffs and/or the Trustee to determine if there are assets to recover for the benefit of the estate.  The Trustee also alleged that unsecured creditors filed claims exceeding $14,600.00 above and beyond the Plaintiffs' claim.  In addition, New York State filed a tax claim of $7,825.00.

On March 14, 2011, the Plaintiffs filed opposition to the Motion to Dismiss Case.  The Plaintiffs alleged that they would be prejudiced by the dismissal of the Debtor's petition and that the instant adversary proceeding may yield assets that are valuable to the estate.  The Plaintiffs made a cross-motion for injunctive relief, pursuant to Rule 7065, requesting that the Court order the Debtor "not to interfere [sic]or remove the molds or equipment, and a direction to disclose the exact location of the molds and equipment."

The hearing on the Motion to Dismiss Case and the Trial were both scheduled for  March 15, 2011.  The Court denied the Motion to Dismiss Case.  At the hearing on the Motion to Dismiss Case, Debtor's counsel indicated that the Debtor had authorized her to withdraw the answer and that the Debtor had no objection to any of the relief sought in the complaint.

However, Debtor's counsel did not formally withdraw the Answer. The Court found that the Plaintiffs did not have standing to include a cause of action for turnover of property pursuant to § 548, and the Court dismissed any claim under § 548.

The Plaintiffs proceeded to trial in order to produce a record on the §§ 523 and 727 causes of action.  The Court found that the issues for trial were limited to nondischargeability under § 523 and denial of discharge under § 727.  Plaintiffs submitted exhibits and examined witnesses.  Debtor's counsel cross-examined some witnesses, but did not present a defense at trial.

At the conclusion of trial, the Court admonished the Debtor not to transfer any assets of the estate and directed AC Mfg. to refrain from transferring assets as well.

### *Discussion*

Before analyzing each cause of action, there are two threshold issues to address in this adversary proceeding: 1) whether the Court is limited to consider causes of action pursuant to § 523(a) as set forth in the complaint, or whether the Court may consider the additional causes of action under § 727 which were raised in the Joint Pretrial Memorandum and at trial, and 2) whether the Court may adopt any of the findings by the State Court in the State Court Decision under the theory of collateral estoppel.

### *Consideration of § 727 Causes of Action*

Although briefly mentioned as a basis for jurisdiction in the complaint and checked off on the adversary cover sheet, the complaint itself contains no references to § 727(a)(2)(A), (a)(3) or (a)(4)(A).  The text of the complaint does contain allegations which set forth claims under these subsections, and the Joint Pretrial Memorandum specifically refers to

the § 727 causes of action.  The issues related to the § 727 causes of action were tried by the parties at trial.  Despite the Plaintiffs' failure to include references to § 727 in the complaint, adequate grounds exist to consider the actual causes of action tried by the parties.  In addition, the § 727 claims would relate back to the date the complaint was filed because the underlying facts are described in the complaint.  Rule 15(b)(2) of the Federal Rules of Civil Procedure allows issues tried by the consent of the parties to be "treated in all respects as if they had been raised in the pleadings."  *Luria Bros. & Co., Inc. v. Alliance Assur. Co., Ltd.,* 780 F.2d 1082, 1088-89 (2d Cir. 1986); *see* Fed. R. Civ. P. 15(b)(2).   "[F]ailure to amend the pleadings to conform them to the evidence and raise these issues does not affect the result of the trial . . . ." *Luria Bros. & Co., Inc.*, 780 F.2d at 1089.   Therefore, so long as the issues were tried by consent of the parties, there is no need to amend the complaint.

Whether the parties seek to amend the complaint, or the Court sua sponte amends the complaint, or even if the complaint is not amended, "the crucial test is whether the parties have consented to litigation of the issue; it must have been tried by their express or implied consent." *Id.*  (citing Fed. R. Civ. P. 15(b); *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir.1977)).   Before the trial, at the hearing on the Motion to Dismiss Case, the Debtor informed the Court that he was willing to withdraw his answer in this adversary proceeding and consent to the judgment sought by the Plaintiffs.  There was no confusion about whether the § 727 issue had entered the case at trial, as it was prominently featured in the joint pre trial memorandum and expressly referred to by the Court at the outset of the trial.  *See Luria Bros. & Co., Inc.*, 780 F.2d at 1089.  This constituted express consent to try the issue of denial of discharge pursuant to § 727(a), which satisfies the test.  Consideration of the § 727 causes of

10

action will not prejudice the Debtor, either.  Over the course of the trial, the Debtor offered no

case and merely cross examined some of the witnesses.  The Debtor was given a full and fair

opportunity to defend against the § 727 causes of actions but chose not to do so.  Because the

complaint contained sufficient allegations related to the § 727 causes of action at issue in the

adversary proceeding, these claims are not time barred.  The deadline to file a complaint under §

727 expired on April 12, 2010, and the complaint was filed on April 7, 2010.  Fed. R. Civ. P.

15(c) codifies the principle that an added claim may relate back to the original date of the

complaint if the complaint "fairly identifies the factual circumstances to which the amended

claim refers."  *In re Pearlman*, 360 B.R. 19, 21 (Bankr. D. R. I. 2006) (citing *Flexi-Van Leasing,

Inc. v. Perez (In re Perez)*, 173 B.R. 284, 290 (Bankr. E.D.N.Y. 1994)).  The complaint  contains

sufficient facts relevant to the § 727(a) claims to warrant a finding that these claims relates back

to the date the complaint was filed.   Since the elements of Rule 15(b) are met, and relation back

applies in this case, the Court shall examine the § 727 causes of action as if they had been raised

in the complaint.

### *Preclusive Effect of State Court Decision*

While the Plaintiffs presented evidence in the form of witness testimony and documents

to support their case, this Court notes that the State Court made certain findings which may bear

on the § 523 claims.  This Court must determine the applicability of collateral estoppel and *res

judicata* in this adversary proceeding. To the extent *res judicata* or collateral estoppel apply, the

Court must give full faith to the findings made in the State Court decision.  This Court recently

held:

> The doctrine of *res judicata*, also known as "claim preclusion," is grounded in the
> Full Faith and Credit Clause of the United States Constitution. U.S. Const. art. IV,

§ 1. It prevents a party from re-litigating any issue or defense that was finally decided by a court of competent jurisdiction and which could have been raised or decided in the prior action. *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994) (applying New York preclusion rules); *Swiatkowski v. Citibank*, 745 F.Supp.2d 150, 171 (E.D.N.Y.2010) (citing *Waldman v. Vill. of Kiryas Joel*, 39 F.Supp.2d 370, 377 (S.D.N.Y.1999)). *Res judicata* applies to judgments that were obtained by default, *see Kelleran v. Andrijevic*, 825 F.2d 692, 694–95 (2d Cir.1987), but it may not apply if the judgment was obtained by extrinsic fraud or collusion, *see In re Ward*, 423 B.R. 22, 29 (Bankr.E.D.N.Y.2010).

*In re Wissell*, Bankr. No. 810-78537-reg, Adv. No. 811-08163-reg, 2011 WL 3607614 (Bankr. E.D.N.Y., Aug. 16, 2011).  Because the Plaintiffs obtained a judgment against the Debtor based on the State Court Decision, and there is no allegation that the State Court judgment was obtained by extrinsic fraud or collusion, this Court is bound to accept the State Court's determination that the Debtor owes the Plaintiffs a debt in the amount of  $103,043.00, plus applicable statutory interest.

"Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding regardless of whether the two suits are based on the same cause of action." *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003) (citing *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S. Ct. 865, 99 L.Ed. 1122 (1955); *Capital Telephone Co. v. Pattersonville Telephone Co.,* 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 13, 436 N.E.2d 461 (1982)). While the Plaintiffs have not requested to use the findings in the State Court Decision, the Court may, under certain circumstances, apply collateral estoppel *sua sponte* to give preclusive effect, in the case before the Court, to issues raised and decided by another court of competent jurisdiction.  *See Doe v. Pfrommer,* 148 F.3d 73, 80 (2d Cir. 1988) (District Court properly raised issue of collateral estoppel *sua sponte* based on "the strong public policy in economizing

the use of judicial resources by avoiding relitigation."). In this case, to the extent the State Court has made findings which are relevant to any of the causes of action which are the subject of this adversary proceeding, it is appropriate to rely on the findings made by the State Court.

Under New York law, collateral estoppel prevents parties from relitigating an issue when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 65 (2d Cir.2007), *cert. denied*, 129 S.Ct. 895 (2009) (citations omitted). In this case, the Debtor had a full and fair opportunity to litigate the matter. The State Court went to great lengths to emphasize that the Debtor had been duly noticed prior to the trial and again via phone call on the morning of the trial. This Court therefore is satisfied that the second required element is met.

Despite the applicability of the doctrine of collateral estoppel, the Bankruptcy Court is the sole authority to determine whether Plaintiffs' claim against the Debtor is non-dischargeable under § 523(a)(2), (4) or (6) of the Bankruptcy Code. *See Grogan v. Garner*, 498 U.S. 279, 283–84, 111 S.Ct. 654, 657-58, 112 L.Ed.2d 755 (1991). This Court is required to make an independent determination that the elements of § 523(a) have been satisfied. In other words, the bankruptcy court must be able to identify clear and specific findings in the pre-petition judgment which correlate to, and are decisive as to, the elements to be proven in the § 523(a) cause of action. The Court limits its discussion to the causes of action under §§ 727(a) and 523(a) of the Code.

### *§ 727(a) Causes of Action*

Section 727(a) "must be construed strictly against those who object to the debtor's

discharge and liberally in favor of the bankrupt." *State Bank of India v. Chalasani (In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir.1996) (internal quotation marks omitted, citations omitted).   However, a discharge under § 727 is a privilege, not a right, and is only to be granted to the honest debtor.  *Congress Talcott Corp. v. Sicari (In re Sicari),* 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994).

### § 727(a)(2)(A)

Section 727(a)(2)(A) provides that a debtor shall not be granted a discharge if the debtor, "with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition . . . ."  11 U.S.C. § 727(a).  To prevail on their § 727(a)(2) cause of action, the Plaintiffs must show "an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor), and the party seeking to bar discharge must prove that both of these components were present during the one year period before bankruptcy."  *In re Boyer*, 328 Fed. Appx. 711, 714 (2d Cir. 2009) (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)) (internal quotations omitted); *see also* 11 U.S.C. § 727(a)(2)(A).  Some of the acts alleged by the Plaintiffs which would fit within this statute, such as the  Debtor's alleged transfer of machinery to AC Mfg. for $5,000.00, took place outside the one year period prior to the Petition Date.  The acts which fall within the one year period prior to the Petition Date concern the Debtor's use of the bank account held by AC Mfg. to deposit money he earned and withdraw funds for his own personal use.  When questioned about the account at the trial, the Debtor explained that he paid his obligations using checks and a debit card from the bank account held by AC Mfg. in lieu of receiving a paycheck directly from AC

14

Mfg. (Tr. Tran. p. 76-81). Because these funds held in AC Mfg's bank account were used to pay the Debtor's obligations, there was no property remaining to conceal. The income was spent by the Debtor using the AC Mfg. bank account as the vehicle, but the Debtor's use of this account to write checks for his personal expenses does not amount to concealment of property. Therefore, this claim is dismissed.

### *§ 727(a)(3)*

Section 727(a)(3) provides that a debtor shall not be granted a discharge if the Debtor has "concealed, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). The purpose of this section is to make discharge "dependent on a true presentation of the debtor's financial affairs." *D.A.N. Joint Venture v. Cacioli* (*In re Cacioli*), 463 F.3d 229, 234 (2d Cir. 2006) (internal quotations omitted) (other citations omitted).

A two-step analysis is necessary to determine if a debtor has violated §727(a)(3). *Id.* at 235. If the creditor can show that (1) the debtor failed to keep or preserve books and records and (2) this failure makes it impossible to ascertain the debtor's true financial condition or business transactions, then the burden shifts to the debtor to demonstrate that the failure was justified. . Intent of the debtor to defraud is not an element of this cause of action. *Id.*.

The test is a question of reasonableness based on the particular circumstances so that "even the negligent destruction of business records may warrant a denial of discharge." *Id.* It is a "loose test, concerned with the practical problems of what can be expected of the type of

15

person and type of business involved." *Id.* In this instance, the Debtor admitted in the Motion to Dismiss Case "[t]hat the Debtor has failed to keep all of his financial records that have been requested by the Trustee and the Plaintiffs in the said Adversary Proceeding pending in Debtor's bankruptcy," and that "the Debtor in this case has lost, destroyed, misplaced or can not [sic] find his financial records that would be needed for him to defendant [sic] himself against the Adversary Proceedings presently before the Court." In addition, the Debtor further admits that he has not "maintain[ed] his financial records, as required under the Bankruptcy Code," to such an extent that it would justify dismissal of the case pursuant to § 707(b).

The allegations made by the Plaintiff in the complaint and in the joint pretrial memorandum include allegations about the disposition of the Debtor's property and the existence or misappropriation of assets by the Debtor. The Debtor has given conflicting answers to the question of the disposition of the molds that were constructed for Hydrogrowers. In the Joint Pretrial Memorandum, the Debtor claimed that the molds were sold to an unnamed individual. In his interrogatories, the Debtor testified that the molds were sold to three unnamed companies. At trial, the Debtor indicated that he was selling hydroponic growing systems made from the molds through the internet. Additionally, the Debtor failed to provide documentation of the ownership or the sale of the molding equipment which he claimed at trial had been owned by him personally and then was later transferred to AC Mfg.

Based on the Debtor's own admissions in documents filed with the Court and the Debtor's own testimony at trial, the Debtor has failed to maintain business and financial records. This failure makes it impossible to ascertain the Debtor's financial condition. This shifts the burden to the Debtor to show that the failure to maintain records was justified under the

circumstances.  As the Debtor has consented to the relief sought and has not put forward a defense, the Court finds that the Debtor has failed to meet his burden, and finds that the denial of the discharge is warranted pursuant to § 727(a)(3).

### § 727(a)(4)(A)

Section 727(a)(4)(A) provides that a debtor shall not be granted a discharge if the debtor has "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account . . . ."  A cause of action pursuant to § 727(a)(4)(A) requires a showing that "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case."  *In re Boyer*, 328 Fed. Appx. at 715 (quoting *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000)).

The burden of showing actual fraudulent intent falls on the party objecting to the debtor's discharge.  *In re Smorto*, No. 07-CV-2727 (JFB), 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008).   The omissions must rise to the level of demonstrating fraudulent intent.  *In re Gollomp*, 198 B.R. 433, 437 (S.D.N.Y.1996).  Fraudulent intent "may be inferred from a series of incorrect statements and omissions contained in the schedules."  *In re Smorto*, 2008 WL 699502, at *6; *Sicherman v. Rivera* (*In re Rivera*), No. 06-8013, 2007 WL 130415, at *5 (B.A.P. 6th Cir. Jan. 11, 2007) ("[T]he Debtor's 'whole pattern of conduct' can support a finding of fraudulent intent.") (other citations omitted);  *In Re Murray*, 249 B.R. 223, 229 (E.D.N.Y 2000).  If a debtor is found to have exhibited a reckless indifference to the truth, then that may be enough to establish fraudulent intent sufficient to deny the discharge.  "Once the [plaintiff] has produced persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to

prove that it was not an intentional misrepresentation or provide some other credible explanation." *See In re Gardner*, 384 B.R. 654, 662-63 (Bankr. S.D.N.Y. 2008) (citations omitted).

At trial, the Debtor admitted that he makes payments using a debit card linked to a bank account held by AC Mfg. for personal expenses, including payments on a car, which he scheduled in his petition. At trial the Debtor insisted that the car was owned by AC Mfg. and was used primarily for business. The Debtor also testified that he wrote several checks from the AC Mfg. account for his personal bills. Despite the Debtor's frequent personal use of the AC Mfg. account, he failed to disclose this bank account in his schedules. The Debtor failed to offer any rational explanation of why the account was not disclosed in his petition, and made conflicting statements regarding his ownership interest in the car. The Court finds that these omissions by the Debtor in his petition and schedules constitute knowing and fraudulent statements under oath. Therefore, the Plaintiffs have met their burden with respect to § 727(a)(4), and the Court finds that denial of the Debtor's discharge pursuant to this section is warranted.

### § 523(a) Causes of Action

On a claim pursuant to § 523(a), the burden is on the party claiming nondischargeability, and the appropriate level of proof is a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. at 285; *In re Hyman*, 335 B.R. 32, 37 (S.D.N.Y. 2005).

#### § 523(a)(2)(A)

Section 523(a)(2)(A) of the Code excepts from discharge debts that are "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The

18

complaint does not include claims for "false pretenses, a false representation, or actual fraud" in any detail. The record at trial does not support an allegation that the Debtor made a "fraudulent representation collateral or extraneous to the contract." Further, the Plaintiffs failed to allege reliance on a false representation. In addition, the State Court finding that the Debtor breached the contract with the predecessor to Hydrogrowers does not necessitate a finding of nondischargeability under § 523(a)(2)(A) on the basis of collateral estoppel. Generally, "mere allegations of breach of contract do not give rise to a claim for fraud or fraudulent inducement." *Gruber v. Victor*, No. 95 CIV. 2285 (JSM), 1996 WL 492991, at *6 (S.D.N.Y. 1996) (quoting *Sudul v. Computer Outsourcing Services*, 868 F.Supp. 59, 61 (S.D.N.Y.1994)).

> [W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.

*Id.*

The State Court found that the Debtor was liable to the Plaintiffs for breach of contract and awarded damages, but did not award punitive damages. The State Court decision makes no finding of fraud with respect to the Debtor's conduct. Therefore, the Court concludes that the record does not sufficiently support a cause of action under § 523(a)(2)(A), and this claim shall be dismissed.

### *§ 523(a)(4)*

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). While federal law narrowly defines the fiduciary relationship as arising from an express or technical trust, in the

context of a claim of fraud or defalcation, it is state law which determines when an express or technical trust exists in each instance. *Zohlman v. Zoldan* (*In re Zoldan*), 226 B.R. 767, 772-73 (S.D.N.Y. 1998).   In the instant case, the State Court determined that the Debtor breached his fiduciary duty to the corporation and to the co-shareholders of Hydrogrowers.  This finding was a necessary element of the State Court's holding that the Debtor's interest in Hydrogrowers should be cancelled.   This Court is bound by the State Court's determination that a fiduciary relationship exists between the Debtor and the Plaintiffs for the purposes of § 523(a)(4).

Defalcation is a "misappropriation or failure to account" by a fiduciary and "requires a showing of conscious misbehavior or extreme recklessness." *Denton v. Hyman (In re Hyman),* 502 F.3d 61, 68 (2d Cir. 2007).  The phrase "failure to account for" property has been interpreted to mean that property is missing or the fiduciary has failed to pay it over as he is supposed to. *Zohlman*, 226 B.R. at 777 n.8. In the instant case, the Debtor agreed to create molds for the construction of the hydroponic growing systems that the Plaintiffs planned to produce and sell. After the molds were paid for, the Debtor breached the contract and failed to provide the molds. The State Court found that the Debtor represented in the Turbo Plastics bankruptcy case that the molds were sold for scrap to an unnamed individual or three unnamed companies for $3,000.00. The Plaintiffs have provided evidence that the molds were not sold for scrap, and have instead been misappropriated by the Debtor for his own personal gain, and that the Debtor has sold and/or is currently selling the product on the internet.  Regardless of whether the Debtor sold the molds for scrap or used them for his personal enrichment, the Debtor has failed to account to Hydrogrowers for the profits he received from selling the molds for scrap or by selling the hydroponic gardens.  The State Court concluded that the Debtor's conduct with respect to the

molds resulted in a breach of his fiduciary duty to Hydrogrowers and its co-shareholders, which conduct constitutes defalcation while in a fiduciary capacity.  Therefore, the amount the Debtor realized from scrapping the molds or selling the gardens is nondischargeable.  Since the Court has concluded that the Debtor's discharge is barred under § 727(a)(3), the Court need not determine the amount of the debt arising from the Debtor's defalcation.

### *§ 523(a)(6)*

Section 523(a)(6) provides an exception for any debt arising from "willful and malicious injury by the debtor to another entity or the property of another debtor." 11 U.S.C. § 523(a)(6). "Willful" within the meaning of Section 523(a)(6) requires a "deliberate or intentional injury, not merely . . . a deliberate or intentional act that leads to injury . . . ." *See Kawaauhau v. Geiger*, 523 U.S. 57, 58, 118 S. Ct. 974, 975 (1998).  Actions which are negligent or reckless do not satisfy the Section 523(a)(6) "willful" standard.  This standard requires that the actor "intend 'the consequences of an act,' not simply 'the act itself.'" *Id.*  Although the Plaintiffs allege a cause of action pursuant to § 523(a)(6), the Plaintiffs fail to allege facts sufficient for a finding that there was "willful and malicious injury by the debtor" that would be the basis of a nondischargeability action pursuant to § 523(a)(6).

*Conclusion*

Based on the entire record, the Court concludes that the Debtor's discharge is denied

pursuant to § 727(a)(3) and § 727(a)(4), and finds that the debt arising from the Debtor's breach

of his fiduciary duty to the Plaintiffs is nondischargeable under § 523(a)(4).  The Court shall enter

a judgment consistent with this Memorandum Decision.


Dated: Central Islip, New York                    By**:**    ___*/s/ Robert E. Grossman*___
      November 8, 2011                              Robert E. Grossman
                                           United States Bankruptcy Judge